1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

VICKI COTTRILL,                        )   1:08cv0159 BAK (DLB)
                                       )
                                       )
                                       )   ORDER REGARDING PLAINTIFF'S
                        Plaintiff,     )   SOCIAL SECURITY COMPLAINT
                                       )
        v.                             )
                                       )
MICHAEL J. ASTRUE, Commissioner        )
of Social Security,                    )
                                       )
                                       )
                        Defendant.     )
                                       )
_____       )

## BACKGROUND

Plaintiff Vicki Cottrill ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  On July 24, 2008, the action was reassigned to the Honorable Theresa A. Goldner for all purposes.  On April 6, 2009, the action was temporarily reassigned to the Honorable Dennis L. Beck due to Judge Goldner's resignation.

1

## FACTS AND PRIOR PROCEEDINGS[2]

2       Plaintiff filed her application on December 3, 2004, alleging disability since December 1,

3   1989, due to mental illness, neuropathy and degenerative disc disease.  AR 63, 139-144.  After

4   being denied initially and on reconsideration, Plaintiff requested a hearing before an

5   Administrative Law Judge ("ALJ").  AR 25-29, 31-35, 37.  On June 19, 2007, ALJ Peter

6   Valentino held a hearing.  AR 418-465.  He denied benefits on August 25, 2007.  AR 10-19.  The

7   Appeals Council denied review on December 12, 2007.  AR 3-6.

8       <u>Hearing Testimony</u>

9       ALJ Valentino held a hearing on June 19, 2007, in Bakersfield, California.  Plaintiff

10  appeared with her attorney, Geoffrey Hayden.  Vocational expert ("VE") Mary Jesko and Medical

11  Expert George Weilepp also appeared and testified.  AR 418.

12      Plaintiff testified that she was 53 years old at the time of the hearing and completed

13  vocational school.  AR 442.  She testified that she was currently living with her parents and had

14  not worked for "quite a long time."  AR 424.  She stopped working in 2001 because the doctors

15  she worked for could not tolerate her crying.  AR 431.  Later in the hearing, Plaintiff testified that

16  she last worked in 1989 and that she wasn't sure how she selected an onset date in 2001.  AR

17  450.

18      Plaintiff has been using a walker since 1989, when she was in a convalescent home for

19  three or four months to learn how to walk again.  AR 420, 443.  Plaintiff helps her disabled

20  parents "straighten up stuff" and takes care of her dog and birds.  AR 426-427.  She has a driver's

21  license and drives to her doctor appointments and sometimes takes her mother shopping.  AR

22  428.  Since 2005, Plaintiff's treatment has consisted of receiving medication for her back and

23  depression.  AR 421.

24      Medical Expert Dr. Weilepp testified that Plaintiff had a pain disorder with chronic back

25  symptoms, was not overweight, had no known trauma and has no neurological findings.  In terms

26  of functioning, her pain disorder was the major issue.  Although he initially thought that the

27  _____

28      [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page
    number.

1   disorder was mild, he determined it was more than mild because Plaintiff was taking narcotics.

2   This is especially true given her remote history of alcoholism, under some control, and anxiety

3   symptoms.  AR 434.  He did not see any objective evidence of a mental deficiency, though her

4   medications could cause such a problem.  AR 436.  Despite this, Dr. Weilepp testified that he

5   would encourage Plaintiff to try and find a job and decrease her medications.  AR 434.  He

6   determined that Plaintiff was capable of restricted light work.  She would be marginally restricted

7   in sitting, standing and walking and could not continuously kneel, crawl, squat, bend or lift.

8   Plaintiff could not climb ladders and had to avoid heights, industrial driving and extremes of cold

9   and vibration.  AR 435.

10          When questioned by the ALJ, Plaintiff testified that when she was not doing light

11   housework for her parents, she was out in the back yard with her animals.  AR 437.  She collects

12   cans and bottles for recycling by tying a bag to her walker, though she has to have someone help

13   her load the cans into the truck.  AR 438, 443.  Plaintiff also visits friends and family.  AR 447.

14          Plaintiff has constant tingling in her hands and feet and has headaches every day.  AR 444-

15   445.  She is also in pain everyday, with the worst pain in her lower back.  The pain shoots down

16   to her legs, and Plaintiff rated her pain as an eight out of ten because she has a high tolerance and

17   "fight[s] it."  Her medications do not cause side effects, though she lays down during the day.  AR

18   444.  Psychologically, Plaintiff testified that she gets very depressed and cries a lot, and then

19   cannot function.  AR 447.

20          Plaintiff thought she could lift about two or three pounds and walk about a block.  AR

21   445.  Her ability to stand depends on the day.  Some days, she could stand for 45 minutes at a

22   time.  Bending at the waist hurts her back and she could not kneel, stoop or squat without pain.

23   AR 446.  When she grocery shops, she uses the cart for support and her father loads the

24   groceries.  AR 446.

25          For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age and

26   education, with no past relevant work.  This person could not perform continuous kneeling or

27   bending, could not climb ladders, ropes or scaffolds and could not tolerate exposure to extreme

28   cold and heat, unprotected heights or vibrations.  This person could not lift or carry more than 10

pounds frequently, 20 pounds occasionally.  The VE testified that this person could perform light jobs such as small parts assembler and gluer.  AR 452-453.  Even if this person could lift 10 pounds maximum, these positions would be available because the jobs are classified as light work due to the repetitive use of the upper extremities, not the weight level.  AR 456-462.

If this person was limited to unskilled sedentary work, she would be disabled under the Medical Vocational Guidelines ("Grids").  AR 454.

Medical Record

A January 8, 2004, MRI of Plaintiff's lumbar spine revealed degenerative disc narrowing and spondylosis at L5-S1.  AR 282.

On March 19, 2004, Plaintiff saw Son T. Dinh, M.D., for complaints of radiating low back pain.  Palpation revealed tenderness over the lumbar and sacral areas, as well as over the bilateral sciatic notches.  Straight leg testing was negative and sensation was intact.  Muscle strength was five out of five in both lower extremities.  Dr. Dinh diagnosed lumbar degenerative disc disease, depression and hepatitis C.  He recommended that Plaintiff have a trial of lumbar epidural injections.  AR 283-284.

On May 20, 2004, Plaintiff was seen at the Kern County Medical Center.  She reported no problems with activities of daily living or ambulating.  She complained of chronic low back pain with radiation into her left leg, though she reported that naprosyn and neurontin helped.  AR 200-203.  Plaintiff continued to receive medication refills through October 4, 2004.  AR 308.

On April 6, 2005, Plaintiff saw John K. Zhang, Psy.D., for a psychological evaluation. Plaintiff reported that she has been unable to work for the past three years because of mental and physical problems.  She further reported that she spends most of her afternoons conducting housekeeping chores in exchange for rent.  She also stated that she has a few friends, socializes regularly and sleeps adequately.  On examination, her mood and affect were unremarkable and her speech and psychomotor activity were within normal limits.  Plaintiff appeared to be functioning at slightly below average, though she had adequate memory and concentration.  Plaintiff was alert and oriented and showed no signs of a thought disorder.  Dr. Zhang diagnosed Plaintiff with dysthymic disorder and opined that her primary impairment was medical in nature.

1   Psychiatrically, he noted that Plaintiff was suffering from "rather mild but chronic symptoms of
2   depression," though her mental status did not suggest any functional limitations.  AR 222-224.

3       Plaintiff returned to Kern County Medical Center on April 7, 2005, for refills of Zoloft,
4   Prevacid and naprosyn.  She had no new complaints.  AR 226-227.

5       On April 10, 2005, Plaintiff saw Min-Ning Huang, M.D., for a comprehensive orthopedic
6   examination.  Plaintiff reported constant, radiating back pain.  She rated it as a ten out of ten, but
7   felt that pain medication helped.  She also complained of numbness in both hands and both feet.
8   Plaintiff stated that she could walk one block and stand for about 30 minutes, though she does all
9   daily activities herself.  Plaintiff is able to wash dishes and do laundry but can no longer mop or
10  vacuum.  AR 243-244.

11      On examination, Plaintiff was in no acute distress even though she rated her pain as a ten.
12  She could get on and off the examination table without difficulty, sit comfortably and take her
13  shoes on and off.  Plaintiff had normal gait and coordination and did not use an assistive device.
14  She had pain in all lumbar ranges of motion and straight leg raising caused pain in both sides of
15  her lower back.  Plaintiff had lower back pain starting at the L4 level all the way down to the
16  sacral area, but no paraspinal muscle spasms.  Strength was five out of five throughout and
17  sensation was intact.  Dr. Huang diagnosed chronic low back pain most likely due to discogenic
18  pain.  Other than local tenderness, Dr. Huang noted that the examination was unremarkable, and
19  even though she rated her pain as a ten, she completed the examination without difficulty and was
20  in no distress.  However, because her x-ray revealed markedly reduced disc space between L5-S1,
21  Dr. Huang believed that Plaintiff could walk for four to six hours and sit for four to six hours with
22  increased breaks to stretch and change position.  She could carry ten pounds and did not need an
23  assistive device.  Plaintiff had to avoid climbing ladders and working on uneven terrain, as well as
24  frequent bending, stooping and crouching.  AR 244-247.

25      On April 29, 2005, State Agency physician Luyen T. Luu, M.D., completed a Mental
26  Residual Functional Capacity Assessment.  Dr. Luu opined that Plaintiff had moderate limitations
27  in her ability to understand, remember and carry out detailed instructions.  Dr. Luu further opined
28  that Plaintiff had sufficient ability to understand and remember simple instructions, maintain

sustained concentration, persistence and pace, maintain socially appropriate behavior and adapt to changes.  AR 248-250.

In a Physical Residual Functional Capacity Assessment form completed on the same day, State Agency physician Lavanya Bobba, M.D., opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for about six hours and sit for about six hours, with normal breaks.  She was unlimited in pushing or pulling and could occasionally climb, balance, stoop, kneel, crouch and crawl.  AR 265-272.  This opinion was affirmed on August 6, 2005.  AR 272.

On September 6, 2005, Plaintiff reported that her back pain and depression were better, though she did indicate she was having problems ambulating.  AR 325.

Plaintiff continued to receive treatment at Kern County Medical Center in February and April 2006, indicating both times that she was not having problems ambulating.  AR 330, 334.  In April, when Plaintiff returned for refills, she reported that she was doing well and not having any issues.  AR 335.

In July 2006, Plaintiff reported that she was not having problems ambulating or performing activities of daily living.  AR 338.  Her depression was stable on Zoloft.  AR 340.

In September 2006, Plaintiff reported problems with both ambulating and performing activities of daily living.  AR 341.  She rated her pain level as a ten.  On examination, muscle strength was normal, she had good range of motion and straight leg raising was negative.  Her mood was stable.  AR 343.

On January 19, 2007, Plaintiff returned to Kern County Medical Center for medication refills and reported no problems with daily activities or ambulating.  She rated her pain level as a five and explained that she was doing okay except for the increased pain in her back.  She had fair range of motion in her spine and no weakness.  AR 346-348.

In May 2007, Plaintiff reported problems with both daily activities and ambulating and rated her pain level at a nine.  AR 353.  Her depression was stable.  AR 354.

1    ALJ Findings

2        The ALJ determined that Plaintiff had the severe impairments of degenerative disc disease

3    and depression.  Despite these impairments, she retained the residual functional capacity ("RFC")

4    to perform light work, with occasional postural limitations, no exposure to extreme temperature

5    changes or vibration, and a limitation to simple, repetitive work.  Based on this RFC and the

6    testimony of the VE, the ALJ concluded that Plaintiff could perform a significant number of jobs

7    in the national economy.  AR 15, 18.

8    **SCOPE OF REVIEW**

9        Congress has provided a limited scope of judicial review of the Commissioner's decision

10   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

11   the Court must determine whether the decision of the Commissioner is supported by substantial

12   evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

13   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

14   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

15   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

16   401.  The record as a whole must be considered, weighing both the evidence that supports and the

17   evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995

18   (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the

19   proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This

20   Court must uphold the Commissioner's determination that the claimant is not disabled if the

21   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

22   substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

23   Cir. 1987).

24   **REVIEW**

25       In order to qualify for benefits, a claimant must establish that he is unable to engage in

26   substantial gainful activity due to a medically determinable physical or mental impairment which

27   has lasted or can be expected to last for a continuous period of not less than 12 months.  42

28   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

7

such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (degenerative disc disease and depression) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform a significant number of jobs. AR 15-18.

Plaintiff argues that the ALJ (1) erred in rejecting the examining physician's opinion; (2) failed to pose a complete hypothetical to the VE; and (3) improperly rejected her testimony and that of lay witness Cheryl Leask.

## DISCUSSION

A.    Examining Physician Opinion

Plaintiff first argues that the ALJ failed to set forth reasons for rejecting Dr. Huang's opinion that Plaintiff could walk for four to six hours, sit for four to six hours, with increased breaks, and carry "around 10 pounds." AR 247.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). At least where the treating doctor's opinion is not contradicted by another

doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

There are no treating physician opinions in the record, leaving the ALJ with the opinions of one consultive physical examination (Dr. Huang), one State Agency physician (Dr. Bobba) and the testifying Medical Expert (Dr. Weilepp).

1    The ALJ found that Plaintiff retained the RFC for light work, with occasional postural

2    limitations, no exposure to extreme temperature changes or vibration, and a limitation to simple,

3    repetitive tasks.  AR 15.  In so finding, the ALJ adopted the opinions of Dr. Weilepp and Dr.

4    Bobba.  Although he noted Dr. Huang's minimal findings on examination, he did not specifically

5    explain why he rejected his limitations, which would have placed Plaintiff at the sedentary level.

6    Had the ALJ found a sedentary RFC, Plaintiff contends that she would have been found disabled

7    pursuant to the Medical Vocational Guidelines.

8    Dr. Huang's findings that Plaintiff could walk for four to six hours, sit for four to six

9    hours, with increased breaks, and carry "around 10 pounds" were contradicted by Dr. Weilepp

10   and Dr. Bobba, both non-examining physicians who set forth functional assessments consistent

11   with light work.  The ALJ was therefore required to set forth specific and legitimate reasons,

12   supported by substantial evidence, for rejecting Dr. Huang's limitations.

13   While Plaintiff correctly notes that the ALJ did not say, "I reject Dr. Huang's opinion

14   because...," his intent is clear from the decision.  The Court recognizes that it cannot rely on post

15   hoc rationalizations, but it may uphold the decision where the record reveals specific, legitimate

16   inferences that may be drawn from the ALJ's opinion justifying the decision not to adopt Dr.

17   Huang's opinion.  *Magallanes,* 881 F.2d at 755.

18   In discussing Dr. Weilepp's testimony, the ALJ explained that it was supported by the

19   medical record.  For example, a majority of Plaintiff's examinations during the relevant period

20   were unremarkable.  AR 17, 226-231, 297-299, 302-303, 306, 335, 347, 364-379.  In fact, many

21   of Plaintiff's visits were for medication refills and she more often than not reported no problems

22   with activities of daily living or ambulating.  AR 17, 200-203, 243, 335, 340, 346.  She was often

23   noted to be doing well and stable on her medications.  AR 17, 335, 340.

24   The ALJ also cited Dr. Huang's opinion, stating that his examination, too, was

25   "unremarkable but for localized tenderness."  AR 17, 246.  The ALJ further noted that Dr. Huang

26   found Plaintiff's complaints of pain "not concordant with clinical or laboratory pathology."  AR

27   17.  Indeed, Dr. Huang explained that "even though she says that she has 10/10 pain, she is able

28   to complete the exam without difficulty," had a normal affect and "did not seem to be in acute

10

1   distress." AR 246.  It is apparent from the ALJ's discussion that he found Dr. Huang's restrictive

2   limitations to be inconsistent with his own examination findings, as well as a majority of evidence

3   in the record.  AR 17.  The ALJ may reject an examining physician's opinion where there are

4   internal inconsistencies in the report.  *Morgan v. Comm'r,* 169 F.3d 595, 603 (9th Cir. 1999).

5          Insofar as Plaintiff suggests that Dr. Huang's discussion of her x-rays supports his

6   limitations, she is mistaken.  Dr. Huang states that x-rays of her back "show that the disk space

7   between L5-S1 is markedly reduced."  AR 246.  He continues, "however, flexion and extension

8   views do not show any instability."  AR 246.  To the extent the objective findings support

9   limitations, the ALJ took these into account by limiting Plaintiff to light work and imposing

10  postural limitations.  Dr. Huang's opinion therefore continues to be inconsistent, and when

11  viewed in light of Dr. Bobba's and Dr. Weilepp's findings that Plaintiff could perform light work,

12  the ALJ was entitled to reject it.

13         Dr. Weilepp's opinions can serve as substantial evidence where, as here, they are

14  supported by other evidence in the record and are consistent with it.  *Morgan,* 169 at 600.  As

15  explained above, the ALJ found that his opinions were supported by the medical record, the

16  opinion of the State Agency physician, and even Dr. Huang's examination findings.

17         The ALJ's treatment of the medical opinions was supported by substantial evidence and

18  free of legal error.

19  B.     Validity of Hypothetical Question

20         Next, Plaintiff contends that the ALJ posed an incomplete hypothetical question to the VE

21  because he failed to include a limitation to simple, repetitive tasks.  Plaintiff also contends that the

22  VE failed to identify a Dictionary of Occupational Title ("DOT") number for any of the work

23  identified, making it difficult to determine whether the jobs could be performed with the limitation

24  to simple, repetitive tasks.

25         "Hypothetical questions posed to the vocational expert must set out all the limitations and

26  restrictions of the particular claimant . . . ."  Embrey v. Bowen, 849 F.2d 418, 422 (9th

27  Cir.1988).  The testimony of a VE "is valuable only to the extent that it is supported by medical

28  evidence."  *Sample v. Schweiker,* 694 F.2d 639, 644 (9th Cir. 1982).

Defendant concedes that although the ALJ found a limitation to simple, repetitive tasks, he did not include this limitation in his hypothetical to the VE. Defendant argues, however, that the omission does not warrant remand because the VE identified unskilled, repetitive work that is inherently limited to simple, repetitive tasks.

In her testimony, the VE identified the unskilled positions of small parts assembler and gluer. AR 453. She further testified that each position required a specific vocational preparation ("SVP") of 2. AR 453. SVP is defined in the DOT as the time it takes for a typical worker to acquire the knowledge necessary for average job performance. SVP level 2 requires more than a short demonstration, up to and including one month. *See Bray v. Comm'r Soc. Sec.*, 554 F.3d 1219, 1230 n.4 (9th Cir. 2009). SSR 00-04p states, "[u]sing the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2."

An SVP level 2 therefore corresponds to unskilled work, which is defined as work that "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). As unskilled positions, small parts assembler and gluer are inherently simple and repetitive in nature. This renders the ALJ's error harmless. *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion).

The VE's failure to cite DOT numbers does not change this result. Plaintiff suggests that this failure prevents the ALJ from concluding that the positions of gluer and/or small parts assembler are consistent with a limitation to simple, repetitive tasks. As discussed above, the positions are commensurate with simple, repetitive work. In her reply, Plaintiff contends that the small parts assembler positions, as identified under various DOT numbers, also require a *reasoning* level of 2.[3] Plaintiff focuses on the use of the word "detailed" in the definition of reasoning level 2 and contends that the positions are therefore beyond Plaintiff's RFC. However, as thoroughly explained in *Meissl v. Barnhart*, 403 F.Supp.2d 981, 983 (C.D.Cal.2005), "[w]hile

---

[3] Assembler, small products I, DOT 706.684-022, and Assembler, small products, II, DOT 739.687-030. The Court notes that Gluer, any industry, DOT 795.687-014 requires a reasoning level of 1. The other gluer positions require either reasoning level 1 or 2.

1   reasoning level two notes the worker must be able to follow 'detailed' instructions, it also . . .

2   downplayed the rigorousness of those instructions by labeling them as being 'uninvolved.'" A

3   reasoning level of 2, then, does not conflict with a limitation to simple, repetitive tasks.  *Id.* at

4   984-985.  Any error is therefore harmless and does not require reversal under *Massachi v. Astrue*,

5   486 F.3d 1149, 1154 n. 19 (9th Cir. 2007) (when ALJ fails to ask VE whether the testimony is

6   consistent with DOT, error can be considered harmless where there is no conflict).

7       Insofar as Plaintiff argues that the VE was incorrect in testifying that a limitation to

8   lifting/carrying 10 pounds occasionally is not necessarily inconsistent with light work, her

9   argument fails.  The Court first notes that Dr. Huang did not specifically limit Plaintiff to

10  "occasional" lifting/carrying of ten pounds.  AR 246.  To the extent that there was a conflict, the

11  VE explained that the positions of gluer and small parts assembler were classified as light work

12  not because of the weight requirement,[4] but because of the "repetitive industrial pace use of the

13  upper extremities of the frequent level."  AR 456.  She confirmed that these positions "do not

14  require lifting greater than ten pounds."  AR 456, 457-458.  Plaintiff's citation to *Distasio v.*

15  *Shalala*, 47 F.3d 348, 350 (9th Cir. 1995) and *Cooper v. Sullivan*, 880 F.2d 1152 (9th Cir. 1989)

16  does not support her argument because both cases involved an ALJ ignoring a VE's testimony

17  that the claimant could perform *less* than the RFC found by the ALJ.  Here, the VE's testimony

18  supported the ALJ's findings.

19      The ALJ's finding that Plaintiff could perform other work was supported by substantial

20  evidence and free of legal error.

21  C.   Subjective Testimony

22      Finally, Plaintiff contends that the ALJ erred in rejecting her testimony, as well as the

23  testimony contained in the Third Party Report of Cheryl Leask.

24

25

26

27

28      [4]  Pursuant to 20 C.F.R. § 416.967(b), light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."

13

1     *Plaintiff's Testimony*

2          In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

3    pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

4    subjective complaints:

5               An ALJ is not "required to believe every allegation of disabling pain" or other
          non-exertional impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).
6          However, to discredit a claimant's testimony when a medical impairment has been
          established, the ALJ must provide "'specific, cogent reasons for the disbelief.'"  *Morgan*,
7          169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why
          the [claimant's] testimony is unpersuasive."  *Id.*  Where, as here, the ALJ did not find
8          "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the
          claimant's testimony must be clear and convincing."  *Id.*

9               Social Security Administration rulings specify the proper bases for rejection of a
10         claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be
          supported by reasons that do not comport with the agency's rules.  *See* 67 Fed.Reg. at
11         57860 ("Although Social Security Rulings do not have the same force and effect as the
          statute or regulations, they are binding on all components of the Social Security
12         Administration, ... and are to be relied upon as precedents in adjudicating cases.");  *see*
          *Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at
13         step three of the disability determination was contrary to agency regulations and rulings
          and therefore warranted remand).  Factors that an ALJ may consider in weighing a
14         claimant's credibility include reputation for truthfulness, inconsistencies in testimony or
          between testimony and conduct, daily activities, and "unexplained, or inadequately
15         explained, failure to seek treatment or follow a prescribed course of treatment."  *Fair*, 885
          F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.
16

17          In his decision, the ALJ first explained that Plaintiff's conditions were mild, stable and

18   controlled.  "In fact, the claimant has reported improvement with conservative medication

19   management, and exhibits no significant sustained clinical abnormalities or symptoms

20   incompatible" with her RFC.  AR 17.  *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d

21   595, 599 (9th Cir. 1999) (ALJ's finding that symptoms improved with medication was valid

22   consideration in assessing claimant's credibility).  The ALJ also explained that Plaintiff's reports

23   are generally benign and there has been no objective findings of nerve impingement.  AR 17.  Of

24   course, the ALJ can consider the objective medical evidence as one factor in his credibility

25   analysis.  Finally, the ALJ noted that Plaintiff's conditions were managed through treatment with

26   her primary practitioner.  AR 17.  *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (evidence

27   of "conservative treatment," such as a claimant's use of only over-the-counter pain medication,  is

28   sufficient to discount a claimant's testimony regarding severity of an impairment).

                                                14

1    Plaintiff contends that contrary to the ALJ's findings, her use of narcotic pain medication

2    negates a finding of conservative treatment.  She cites Dr. Weilepp's testimony that Plaintiff's

3    pain disorder may be more than mild because of her use of narcotic pain medication, as well as his

4    statement that her treatment was "marginally effective."  AR 434.  Dr. Weilepp concluded,

5    however, that Plaintiff could perform restricted light work, and this does not further her

6    argument.  AR 435.

7        *Third Party Testimony*

8    As to Ms. Leask's March 25, 2005, Third Party Function Report, Plaintiff is correct that

9    the ALJ did not address the report in his decision.  Although an ALJ must consider lay witness

10   testimony and provide specific reasons if he chooses to reject it, a failure to do so can be

11   harmless.  *Stout v. Comm'r, Soc. Sec.*, 454 F.3d 1050, 1053-1056 (9th Cir.2006); 20 C.F.R. §§

12   404.1513(d)(4) & (e), 416.913(d)(4) & (e).  The error will be considered harmless only if the

13   reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the

14   testimony, could have reached a different disability determination."  *Stout*, 454 F.3d at 1056.

15   Ms. Leask, Plaintiff's friend, indicated that she had known Plaintiff for 40 years and visits

16   her at least weekly, up to two to three times a week.  During the day, Plaintiff may walk around

17   the house or outside, if she has help.  Ms. Leask indicated that Plaintiff could no longer drive,

18   cook, clean, vacation, take walks, ride a scooter, go out with friends or do laundry.  Plaintiff

19   cannot prepare meals or finish the dishes because she cannot stand long enough.  She cannot lift

20   more than six pounds, cannot squat or bend and cannot sit or stand for long periods.  Her memory

21   is not good, but her memory and understanding improve when she takes her medication.  Ms.

22   Leask thought that Plaintiff could walk about half a block before needing to rest.  She stated that

23   Plaintiff lives in pain and is very depressed.  AR 145-153.

24   The ALJ's failure to discuss Ms. Leask's statement was harmless error, at most.  First, the

25   weight to which Ms. Leask's statement would be entitled is unclear because it is difficult to

26   determine how much time Ms. Leask actually spent with Plaintiff.  She stated that she sees

27   Plaintiff only two to three times per week and sometimes only sees her once a week depending on

28   her own health.  AR 145.  *See eg. Sprague v. Bowen*, 812 F.2d 1226, 1231-32 (9th Cir.1987) (lay

witness testimony by family members who have the opportunity to observe plaintiff on a daily basis "constitutes qualified evidence" that the ALJ must consider."); *see Dodrill*, 12 F.3d at 919 ("[a]n eyewitness can often tell whether someone is suffering or merely malingering ... this is particularly true of witnesses who view the claimant on a daily basis ...").

Second, Ms. Leask's statements describing Plaintiff's daily activities are contrary to Plaintiff's own testimony. For example, although Ms. Leask stated that Plaintiff could no longer drive, cook, clean, do laundry, take walks, or go out with friends, Plaintiff testified that she did light housework for her parents, collects cans and bottles for recycling by tying a bag to her walker, drove to her doctors' appointments and visits friends and family. AR 428, 437, 438, 443, 447.

Third, the medical evidence from the time when Ms. Leask completed her report is so benign that it calls her entire report into question. Ms. Leask completed her report in March 2005, and there is no evidence of treatment since May 2004. On April 6, 2005, twelve days after Ms. Leask completed her report, Plaintiff told Dr. Zhang that she spends most of her afternoon performing household chores in exchange for rent, socializes regularly and sleeps adequately. AR 222. On April 10, 2005, Plaintiff told Dr. Huang that she was able to perform all activities of daily living and was able to wash dishes and do laundry. AR 243. Plaintiff did not receive treatment again until September 2005, when she reported that her pain and depression were improving, though she was having problems ambulating. AR 325-326. For more than one year after Ms. Leask's report, Plaintiff reported that she was doing well and had no issues. AR 335, 340.

The Court therefore finds that even if this testimony was fully credited, no reasonable ALJ could have reached a different disability determination. Plaintiff's arguments are without merit and must be denied.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

16

Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael

J. Astrue, Commissioner of Social Security and against Plaintiff, Vicki Cottrill.


IT IS SO ORDERED.

**Dated:**   **October 14, 2009**              _____**/s/ Dennis L. Beck**_____
                                                    UNITED STATES MAGISTRATE JUDGE